UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLARENCE D. NOBLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1759** |
| **JEAN LLOVET - (DIRECTOR), STEPHEN J. WINDHORST - (JUDGE), FRANK BRINDISI - (ASSISTANT DISTRICT ATTORNEY), JESSICA INEZ LACAMBRA - (STATE ATTORNEY)** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.     Factual Background**

The plaintiff, Clarence D. Noble ("Noble"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the Director of the Jefferson Parish Medical Department Jean Llovet, Judge Stephen J. Windhorst of the 24th Judicial District Court in Jefferson Parish, Jefferson Parish Assistant District Attorney Frank Brindisi, and Jessica Inez Lacambra, his appointed counsel in his prior criminal proceedings.

Noble alleges that he was denied his right to access to the courts by Llovet. He alleges that he tried for two years to have her send him a copy of his mental health records from the prison, and she failed to timely provide them. He claims that he needed the records to support his claims on post-conviction review, in which he challenged the propriety of his guilty plea. Noble indicates that he finally received the records on June 27, 2011, after he filed suit against Llovet to obtain the records.

Noble further alleges that Judge Windhorst and defendants Brindisi and Lacambra denied him due process in negotiating and accepting his plea of guilty while he was under the influence and heavily sedated by a psychiatric drug called haloperidol.[1] Noble does not indicate the charge for which he was convicted.

He alleges that he filed for post-conviction relief in the state trial court on January 26, 2010, and the application was denied on March 17, 2010 for failure to prove he was incompetent at the time of the plea. The state trial court also denied his request to have the prison medical records brought to the court in support of the claims. Noble alleges that Judge Windhorst abused the legal process and denied him judicial review by repeatedly denying his requests to subpoena and produce the records.

Noble also claims that he was placed under mental health observation after a status hearing before the state court on November 2, 2006. He indicates that Brindisi and Lacambra were both present at the hearing, but he was not. He further claims that on November 15, 2006, he had to be brought to court from the prison medical ward in order to enter the guilty plea.

---

[1] This is the generic name for Haldol which is used to treat psychotic disorders, such as schizophrenia, and the effects of Tourette's syndrome. http://www.medicinenet.com/; http://www.webmd.com/.

He alleges that the state court and the prison medical department violated his constitutional rights in allowing this to happen. He claims that Brindisi and Lacambra further violated his rights by persuading Judge Windhorst not to have him evaluated or to hold a competency hearing before the plea. As a result, he was sentenced to 25 years in prison after his plea of guilty.

As relief, Noble seeks $20 million in punitive damages. He also seeks to have the defendants punished and disciplined for their actions and mistakes and to be paid for pain, suffering, mental anguish, and the "dysfunctional condition" of his health caused by their actions.

## II. Standards of a Frivolousness Review

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably

3

meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III. Analysis

### A. Denial of Due Process

Noble alleges in part that his guilty plea was unconstitutionally obtained and that he remains in prison because of the actions of the defendants. As will be further discussed in this Report, because his claims directly challenge the validity of his current confinement, they are barred from review under § 1983 at this time under the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In accordance with *Heck*, however, the court must also consider as an initial matter any applicable doctrines of absolute immunity and improperly named defendants.

#### 1. Claims Against Judge Windhorst

Noble has named Judge Windhorst as a defendant for his role in presiding over his criminal proceedings and post-conviction matters. The Judge is immune from suit.

Absolute judicial immunity is a time honored principle established to ensure the proper administration of justice by allowing a judicial officer to exercise his authority free from any apprehension as to any personal consequences he or she may face. *See Mireles v. Waco*, 502 U.S. 9, 10 (1991). In a suit seeking damages against a judge, the doctrine of absolute immunity should be considered as a threshold matter. *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

Judges enjoy absolute judicial immunity for acts performed in judicial proceedings. *Mays v. Sudderth*, 97 F.3d 107, 110-11 (5th Cir. 1996). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority;

4

rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.*, at 111 (*quoting Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (further citation omitted)). Acts are judicial in nature if they are normal judicial functions that occur in the judge's court or chambers, and which were centered around a case pending before the judge. *Brewster v. Blackwell*, 692 F.2d 387, 396-97 (5th Cir. 1982).

In addition, the Federal Courts Improvement Act of 1996 ("FCIA") amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983. Thus, injunctive relief is not available against a judge in his role as a judicial officer individually or in his official capacity. *Guerin v. Higgins*, 8 Fed. App'x 31, 32 (2d Cir. 2001); *Nollet v. Justices of the Trial Ct. of the Commonwealth of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000); *accord Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (the 1996 amendment to § 1983 would limit the relief available from a judge to declaratory relief).

The doctrine of absolute judicial immunity bars Noble's suit against Judge Windhorst. The claims must be dismissed as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant pursuant to § 1915(e)(2) and § 1915A(b).

### 2. Claims Against Assistant District Attorney Brindisi

Noble alleges that Frank Brindisi acted improperly in proceeding with the guilty plea when Noble was on psychiatric medication. He also alleges that Brindisi's violated his constitutional rights in arguing for the state trial court not to have him evaluated for mental competence before the plea. Brindisi enjoys absolute immunity from suit for these allegations.

5

The Supreme Court has recognized that there are some officials whose duties require a full exemption from liability. Such officials include prosecutors in the performance of their official functions. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Yaselli v. Goff*, 275 U.S. 503 (1927). In order to determine whether a government official is absolutely immune from suit, the proper focus should not be the identity of the party claiming the immunity, but rather, his "role in the context of the case." *Mays,* 97 F.3d at 110. In other words, immunity attaches to particular official functions, not to particular offices. *Forrester*, 484 U.S. at 229; *see also O'Neal v. Miss. Bd. of Nursery*, 113 F.3d 62 (5th Cir. 1997).

In the context of absolute prosecutorial immunity, immunity from suit extends to those acts "intimately associated with the judicial phase of the criminal process" which includes the presentation of the State's case and evaluating evidence. *Burns v. Reed*, 500 U.S. 478, 492 (1991). Also, among the traditional functions of a prosecutor is the duty to decide which charges to bring and whether to pursue a conviction in court. *See Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).

Noble's claims against Brindisi are intimately associated with the judicial phase of the criminal process and his presentation of the State's case. Brindisi is clearly entitled to absolute immunity from suit for his role in prosecuting the charges against Noble. His claims against Brindisi must be dismissed as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant pursuant to § 1915(e)(2) and § 1915A(b).

### 3. Claims Against Attorney Jessica Inez Lacambra

Noble has also included as a defendant in this § 1983 case his state court appointed defense attorney, Jessica Inez Lacambra. She too is not a proper defendant.

Section 1983 imposes liability on any person who violates someone's constitutional rights under color of law. 42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police.*, 491 U.S. 58 (1989). Under § 1983, the plaintiff must prove that a constitutional violation occurred, and that the defendant's actions were taken under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

It is well established that neither a privately retained attorney nor a court appointed attorney is a state actor for purposes of § 1983. *Pete v. Metcalfe*, 8 F.3d 214, 216-17 (5th Cir. 1993) (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)). Consequently, there can be no liability under § 1983 without some proof of an overt joint action with the State or one of its agents, to violate his constitutional rights. *Dennis*, 449 U.S. at 27-28; *Pete*, 8 F.3d at 216-17; *Hobbs v. Hawkins*, 968 F.2d 471, 480 (5th Cir. 1992).

In this case, Noble has not alleged such an concerted effort by his counsel. *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990). Noble's only allegation against Lacambra, under a broad reading, is that she should not have allowed him to enter a plea while he was on psychiatric medication. This allegation presents no basis for her to be considered a person for purposes of suit under § 1983.

For these reasons, the claims against Lacambra should be dismissed as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

### 4. **The *Heck* Doctrine and Noble's Due Process Claims**

Noble also alleges generally that his guilty plea was unconstitutionally obtained and that he remains in prison because of the actions of Judge Windhorst and defendants Brindisi and Lacambra.

Because his claims directly challenge the validity of his current confinement, any remaining portions thereof are barred from review under § 1983 at this time.

In *Heck*, the Supreme Court held that a claim under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or his present confinement. *Heck*, 512 U.S. at 477. Before a plaintiff can proceed under § 1983 on claims challenging a criminal conviction or proceeding, he must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87; *see also Jackson*, 49 F.3d at 177; *Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994).

Noble's conviction has not been successfully challenged in any of these manners. In fact, Noble bases his claims here on the fact that he has not received relief from his conviction. A ruling in this case regarding the validity of his guilty plea and the propriety of the subsequent rulings by the state trial court on post-conviction review would impact the validity of Noble's present confinement. His claims, therefore, fall within the *Heck* bar. His civil rights claims are not cognizable at this time and must be dismissed with prejudice until such time as the *Heck* conditions are met. *Johnson v. McElveen*, 101 F.3d 423 (5th Cir. 1996) (dismissal under *Heck* is with prejudice).

Furthermore, although he has not asked this court to release him from his current confinement, his claims to a certain extent sound in habeas corpus. However, this civil rights proceeding is not the appropriate place to pursue that type of relief. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir. 1997), *reh'g en banc granted and*

*op. vacated*, 133 F.3d 940 (5th Cir. 1997), *rev'd in part on other grounds and op. reinstated in relevant part*, 154 F.3d 186, 187 (5th Cir. 1998) (*en banc*); *Hernandez v. Spencer*, 780 F.2d 504, 504 (5th Cir. 1986). As required by *Heck*, Noble must first pursue any such habeas corpus claims in a properly filed state post-conviction application or federal habeas corpus proceeding if appropriate.

Therefore, the Court must dismiss with prejudice Noble's § 1983 claims challenging the validity of his state court proceedings until such time as the *Heck* conditions are met. *See Johnson*, 101 F.3d at 423. His claims are therefore frivolous and otherwise fail to state a claim for which relief can be granted.

### B. Denial of Access to the Courts

Noble alleges that Jean Llovet, a director and employee of the Jefferson Parish Prison Medical Department, denied him access to the courts where she failed to timely provide him with copies of his prison mental health records. He alleges that he needed the records as exhibits for his state court post-conviction application to prove that he was on psychiatric medication at the time of his plea.

Prisoners have a constitutional right to access the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). Such a right "is founded on the due process clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). This right is not unlimited and provides only that a prisoner or any person be provided "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 825).

According to the Supreme Court, the right to access the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Therefore, a prisoner alleging a *Bounds* violation must demonstrate an actual injury. *Lewis*, 518 U.S. at 351. Because of the actual injury requirement, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id*. In order to demonstrate actual injury, the prisoner must show that the underlying cause of action was "arguable" and "non-frivolous." The prisoner must show that he was prevented from raising a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (quoting *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). The Supreme Court, however, has not extended the right to encompass more than the ability to prepare and transmit a necessary legal document to a court. *See Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).

In this case, Noble alleges that he sought post-conviction relief on the basis that his plea of guilty was not knowing and voluntary because he was on psychiatric medication at the time. He concedes that he was able to file his application for post-conviction relief in the state trial court and that his claims were considered, albeit without the medical records attached. Based on his allegations, his claims were denied as meritless. He also indicates that he twice requested assistance of the state trial court in obtaining those same records, and those requests were denied. The state court apparently found them unnecessary for its review.

Here, Noble concedes that he was in fact able to file his application for post-conviction relief and that his claims were not found to be meritorious. He, therefore, was not prevented from filing

a meritorious claim. For the reasons stated previously, *Heck* prevents this Court from reviewing the post-conviction claims to determine merit or to question the findings of the state trial court on post-conviction review.

Noble, nevertheless, contends that the denial of relief was at least in part because he did not have the medical records he sought to obtain from Llovet. In the Fifth Circuit, however, the right to access to the courts is not broad enough to encompass a right to be free from the denial of access to documents or even fraudulent tactics employed by government officials in connection with a lawsuit. *See Foster v. City of Lake Jackson*, 28 F.3d 425, 430-31 (5th Cir. 1994). Instead, due process through access to the courts is implicated only "where the ability to file suit was delayed or blocked altogether." *Id*. at 430. That is not the case here.

For these reasons, the claims against Llovet should be dismissed as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

## IV.     Recommendation

It is therefore **RECOMMENDED** that Noble's § 1983 claims against Judge Stephen J. Windhorst and Frank Brindisi, be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant pursuant to 28 U.S.C. §§ 1915(e), 1915A.

It is further **RECOMMENDED** that Noble's § 1983 claims against Jessica Inez Lacambra and Jean Llovet be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A.

It is further **RECOMMENDED** that Noble's § 1983 claims challenging the validity of his guilty plea and his current confinement be **DISMISSED WITH PREJUDICE** as frivolous and

11

otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A, until such time as the *Heck* conditions are met.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 5th day of December, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[2]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.